UNITED STATES DISTRCT COURT
SOUTHERN DISTRICT OF NEW YORK

DENNIS DIDONATO, on behalf of TRI-
TECHNOLOGIES, INC. AND TRI-TECH
REALTY, LLC,

                    Plaintiff,

                    -against-

DAVID HIRSCH, TRI-TECHNOLOGIES, INC.
AND TRI-TECH REALTY, LLC,

                    Defendants.

**VERIFIED COMPLAINT AND
JURY DEMAND**

Plaintiff, Dennis DiDonato ("Plaintiff"), by and through his counsel, GordonLaw LLP, as

and for his Verified Complaint in this derivative action, hereby alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff owns 50% of the stock of nominal Defendant Tri-Technologies, Inc. (the

"Corporation"), which manufactures mechanical parts and assemblies, and owns a 50%

membership interest in nominal Defendant Tri-Tech Realty, LLC (the "LLC"), which owns the

building in Mt. Vernon, New York, where the Corporation does business.

2.      Defendant David Hirsch ("Defendant") owns the other 50% of the stock of the

Corporation and the other 50% membership interest in the LLC.

3.      As more fully explained below, for many years, Plaintiff has grown increasingly

frustrated with the deceitfulness and self-dealing of Defendant, who had agreed long ago to act in

good faith, honestly, and with integrity as the day-to-day business operations manager of the Tri-

Tech Companies (together, the "Tri-Tech Companies").

4.      Loathe to become enmeshed in a stressful and contentious relationship with Defendant, and not inclined to litigate with Defendant, Plaintiff reluctantly accepted the fact that the only way he could amicably extricate himself from doing business with Defendant was to walk away from the Tri-Tech Companies, both of which he was instrumental in starting and allow Defendant essentially to inherit the business, in exchange for a buy-out payment.  This was not an ideal situation for Plaintiff, but one he was prepared to accept to separate himself from Defendant.

5.      Accordingly, beginning in or about 2009, Plaintiff began to discuss a deal in which Defendant would buy out Plaintiff's interest in the Tri-Tech Companies.

6.      Despite repeated good faith efforts by Plaintiff, and because of bad faith on the part of Defendant, the parties' negotiations, which lasted from 2009 to 2016, never materialized into an agreement; therefore, Plaintiff and Defendant both remain 50% owners of the two businesses at issue in this case, a situation that has become intolerable to Plaintiff because of the incredibly damaging acts of misconduct that Defendant has perpetrated against the Tri-Tech Companies and therefore against Plaintiff.

7.      Most recently, and by way of example, as a direct and proximate result of Defendant's misconduct, the Corporation was sued in the Supreme Court of the State of New York, County of Westchester, by JPMorgan Chase for allegedly defaulting on two business loans of $300,000 (the "Chase Loans") that Plaintiff and Defendant guaranteed in their individual capacities.  In that same action, JPMorgan Chase sued Plaintiff and Defendant individually as guarantors on the Chase Loans.

8.      Plaintiff recently discovered that Defendant diverted all proceeds from the Chase Loans to himself, ostensibly as "compensation," even though (*a*) the Chase Loan proceeds were

2

never intended to be used as "compensation" for Defendant, (b) Defendant never told Plaintiff that the loan proceeds would be used as compensation for either of them, let alone Defendant, and (c) no such compensation was due to Defendant.

9.      The Chase Loans scheme is only one example of the harm Defendant has inflicted on the Corporation.  Plaintiff has developed information showing that, in addition to the Chase Loans scheme, Defendant has diverted other assets of the Corporation to his own personal benefit and has made terrible and selfish business decisions that have benefited him but harmed the Tri-Tech Companies (and, therefore Plaintiff) financially.

10.      In light of the repeated defalcations by Defendant, and because of Defendant's refusal to deal in good faith, Plaintiff has not been able to unwind his involvement in the Tri-Tech Companies, leaving him no choice but to seek not only compensation on behalf of the Tri-Tech Companies (in an amount to be proven but in no event less than $3 million, exclusive of interest) but also the equitable remedies of an accounting, a judicial dissolution and winding up of the Corporation and the LLC, and the installation of a Receiver or liquidating agent.

## JURISDICTION AND VENUE

11.      Given the actions Defendant has taken as the day-to-day business affairs manager of the Tri-Tech Companies, are nominal parties because their actions were driven and controlled by Defendant, the Tri-Tech Companies are antagonistic to Plaintiff and therefore align, for jurisdictional purposes, on the side of the defendants.

12.      Subject matter jurisdiction exists for this case to be heard in this Court pursuant to 28 U.S.C. § 1332 inasmuch as Plaintiff, on the one hand, and Defendants, on the other hand, are citizens of different states, the amount in controversy exceeds $75,000, and this action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

13.     This Court has personal jurisdiction over Defendant and the Tri-Tech Companies pursuant to New York Civil Practice Law and Rules, which applies for jurisdictional purposes in this case, because, upon information and belief: (*a*) Defendant and the Tri-Tech Companies are all domiciled in the State of New York; (*b*) Defendant and the Tri-Tech Companies have transacted business in the State of New York; and/or (*c*) Defendant and the Tri-Tech Companies regularly do business in the State of New York, chiefly from the headquarters of the Companies, located at 40 Hartford Avenue, Mount Vernon, Westchester County, New York.

14.     Venue is proper in the White Plains Courthouse of this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) because Defendant and the Tri-Tech Companies are all located in Westchester County, New York State.

## THE PARTIES

15.     Plaintiff is an individual who resides at 12 Cindy Lane, Weston, CT 06882.

16.     Upon information and belief, Defendant resides at One Renaissance Square, Apartment 35-E, White Plains, New York.

17.     The LLC was duly formed and exists under the laws of the State of New York and, according to the publicly available files of the Secretary of State of the State of New York, is in good standing.

18.     The Corporation was duly organized and exists under the laws of the State of New York and, according to the publicly available files of the Secretary of State of the State of New York, is in good standing.

19.     The Tri-Tech Companies are located and have their principal places of business at 40 Hartford Avenue, Mount Vernon, Westchester County, New York (the "Property").

20.     The LLC acquired the Property, the primary asset of the LLC, in or about 2002.

21.     At all relevant times, Plaintiff has held shares of stock of the Corporation representing one-half of the votes of all outstanding shares of the Corporation entitled to vote in an election of directors of the Corporation.

22.     At all relevant times, Defendant has held shares of the Corporation representing one half of the votes of all outstanding shares of the Corporation entitled to vote in an election of directors of the Corporation.

23.     At all relevant times, each of Plaintiff and Defendant is and has been a 50% owner of all of the shares of stock of the Corporation and a 50% owner of all of the membership interests of the LLC.

24.     There are no shareholders of the Corporation and no Members of the LLC other than Plaintiff and Defendant, each of whom owns a 50% interest, respectively, in the Corporation and the LLC.

## THE FACTUAL BACKGROUND

**A.     The Background Facts regarding the Corporation**

25.     In or about April 1996, Plaintiff, Defendant, and one other individual formed the Corporation under the laws of the State of New York.

26.     Shortly after the formation of the Corporation, the third shareholder voluntarily sold his interest equally to Plaintiff and Defendant, who became the sole shareholders of the Corporation.

27.     On or about December 13, 2007, Plaintiff, Defendant, the Corporation, and the former shareholder, acting as escrowee, executed, entered into, and adopted a written shareholders' agreement (the "Shareholders' Agreement," a true and accurate copy of which is incorporated by reference herein, made a part hereof, and annexed hereto as Exhibit 1.

5

28.     Among other things, the Shareholder' Agreement provides that (a) each of Plaintiff and Defendant shall own 50% of all outstanding shares of the Corporation, (b) the Shareholders must unanimously agree to any of the following actions:  (i) the "[i]ncurrence of indebtedness by the Corporation in excess of Ten Thousand ($10,000) Dollars other than in the ordinary course of business," (ii) "[p]ledge the credit of the Corporation in any way or otherwise give any guarantee or indemnity to secure the liabilities of any person," (iii) "discharge legal counsel or accountants," and (iv) "[m]ake any loan or advance or give any credit to any person." *See* Exh. A hereto, § 2.3.

29.     Section 2.4 of the Shareholders' Agreement provides that (a) "[a]ll funds of the Corporation shall be deposited in such bank accounts as the Corporation, acting by and through its officers, shall designate and (b) the signatures of the President of the Corporation, Plaintiff, and the Vice-President of the Corporation, Defendant, are required for any check drawn on the Corporation's bank account exceeding $100,000.00.

**B.     The Background facts regarding the LLC**

30.     On or about July 28, 1997, Plaintiff and Defendant formed the LLC.

31.     On or about December 13, 2007, Plaintiff and Defendant executed, entered into, and adopted an operating agreement for the LLC (the "Operating Agreement," a true and accurate copy of which is incorporated by reference herein, made a part hereof, and annexed hereto as Exhibit 2).

32.     Pursuant to §§ 2.1 and 2.3 of the Operating Agreement, the two Members of the LLC (as that term is defined and used in the Operating Agreement) are Plaintiff and Defendant, and no additional Members may be admitted without the approval of Plaintiff and Defendant.

6

33.   The only Members of the LLC are Plaintiff and Defendant; there are no other

Members, and neither Plaintiff nor Defendant has proposed the admission of any other Members.

34.   Pursuant to § 7.1 of the Operating Agreement, all net profits and losses of the

LLC must be allocated equally between the two 50% shareholders, which are and at all times

have been Plaintiff and Defendant.

35.   Section 4.1 of the Operating Agreement provides that Plaintiff and Defendant, as

Members of the LLC, shall manage the LLC.

36.   Section 4.4 of the Operating Agreement provides, in relevant part:

> Subject to restrictions that may be imposed from time to time by the
> Manager or members, each Manager shall be an agent of the Company to
> conduct and manage the affairs of the Company in the ordinary course of
> the Company's business.   Notwithstanding anything contained herein to
> the contrary, without first obtaining approval by unanimous vote or
> written consent of the Members, the Company shall not take any of the
> following actions and the Managers shall have no authority to bind the
> Company as to the following matters:
>
> 4.4.1   The sale, lease, exchange, mortgage, pledge, or other
> transfer or disposition of all or substantially all the assets of the Company.
>
> * * *
>
> 4.4.6   Sell, assign, pledge, hypothecate, refinance or mortgage
> any asset belonging to the Company, authorize the construction of any
> improvements thereto or thereon, or execute any bond or lease in the
> Company name.
>
> * * *
>
> 4.411   Authorize the use of the name of the Company in any manner, or
> authorize the use of any other intangible asset of the Company.
>
> * * *
>
> 4.4.12   Either retain or discharge legal counsel or accountants.

37.     The Operating Agreement also provides, among other things, that (*a*) either Manager can be removed only by unanimous vote of the Members (*id.*, §4.8), (*b*) [t]he salaries and other compensation of the Managers shall be fixed from time to time by a unanimous affirmative vote of the all the Members.;" (*c*) each of the two Members shall have access to the LLC's books and records (*id.*, § 8.1), (*d*) all distributions of LLC cash or property prior to the LLC's dissolution "shall be allocated among the Members in proportion to each Member's respective Percentage Interest in the Company; (*e*) upon the dissolution of the LLC, the Managers shall wind up its affairs and take a "full account" of the LLC's assets and liabilities." of t. *Id.*, § 8.2.

**C.    Defendant's responsibility for managing the business operations of the Tri-Tech Companies**

38.     As of the date the Corporation was formed, and at all relevant times thereafter, Defendant, at his own request, has been primarily responsible for the day-to-day business operations of the Corporation.

39.     As of the date the LLC was formed, and at all relevant times thereafter, Defendant, at his own request, has been primarily responsible for the day-to-day business operations of the LLC.

40.     Plaintiff agreed to acquiesce in Defendant's request to act as the day-to-day manager of the Tri-Tech Companies on condition that (*a*) Defendant act honestly, with integrity, in compliance with the provisions of the Shareholders' Agreement and the Operating Agreement (as of the respective dates those agreements were adopted), and in the best interests of the LLC; and (*b*) Plaintiff would not relinquish any of his rights under the Shareholders' Agreement or the Operating Agreement (as of the respective dates those agreements were adopted), including without limitation the voting and consent rights set forth in those agreements.

8

41.     Defendant agreed to Plaintiff's conditions as set forth above in Paragraph 40.

42.     As of the time he took operational control of the business affairs of the Tri-Tech Companies, Defendant repeatedly promised and assured Plaintiff that he (Defendant) would act in the best interests of the Tri-Tech Companies, that he would comply with his contractual and fiduciary obligations, and that Plaintiff need not worry about Defendant's honesty, integrity, or commitment to serving the best interests of the Tri-Tech Companies.

43.     Accordingly, since the formation of the Tri-Tech Companies, Defendant, at his request, and upon his commitment to honor the conditions set by Plaintiff, as set forth above in Paragraph 40, has been primarily responsible for the day-to-day business operations of the Tri-Tech Companies, including, among other  things, the obligation to maintain the books and records of the Tri-Tech Companies, ensure that all employees were paid, ensure that all taxes and other expenses be paid, act as a steward for the monies generated by each of the Tri-Tech Companies, and otherwise be a fiduciary of the Tri-Tech Companies.

**D.     Defendant's wrongful, improper, and deceitful conduct**

44.     Upon information and belief, Defendant repeatedly has engaged in fraudulent, self-dealing, and oppressive behavior toward Plaintiff and has diverted and misappropriated assets of the Companies to benefit Defendant personally, in violation of his promises and assurances to Plaintiff, in violation of the Shareholders' Agreement and the Operating Agreement, and in violation of the laws of the State of New York.

45.     Upon information and belief, Defendant has dissipated, transferred, and taken for his own benefit assets of the Tri-Tech Companies without providing Plaintiff with just compensation for those assets, placed the Tri-Tech Companies in legal and financial jeopardy, and caused the Tri-Tech Companies needlessly to incur legal and other related expenses.

46.     Upon information and belief, Defendant, by diverting the Corporation's funds for his own personal use, wrongfully, improperly, falsely, and deceitfully allocated the Corporation's profits for his own personal benefit.

47.     Upon information and belief, Defendant falsely characterized such diversions as either "compensation" or the "operating expenses" associated with various customer projects thereby wrongfully, improperly, falsely, and deceitfully reducing the profits of the Corporation, including those that otherwise would have been allocated to Plaintiff, and falsely increasing the cost of goods associated with such projects.

48.     Upon information and belief, Defendant's misconduct, as outlined above, drained the Corporation's assets, which otherwise could have been used for Corporation purposes such as, by way of example, paying the Corporation's debts, including without limitation the Chase Loans.

49.     Only the Tri-Tech Companies have the right to occupy the Property, and, upon information and belief, the Tre-Tech Companies are the only occupants of the Property.

50.     Upon information and belief, Defendant failed to satisfy various basic obligations of the Tri-Tech Companies on a timely basis, including without limitation the Corporation's obligations to pay income taxes, payroll taxes, and to pay rent to the LLC for the use of the Property.

51.     Upon information and belief, Defendant deliberately chose not to pay the obligations set forth in Paragraph 50 above.

52.     By deliberately and wrongfully causing the Corporation to withhold tax, rent, and other payments from the LLC, Defendant, upon information and belief, wrongfully, improperly,

falsely, and deceitfully increased the amount of cash in the Corporation's bank account, which, upon information and belief, he then transferred and diverted to himself.

53. By deliberately causing the Corporation to withhold tax, rent, and other payments from the LLC, Defendant, upon information and belief, wrongfully, improperly, falsely, and deceitfully deprived the LLC of monies that was due to it.

54. Upon information and belief, Defendant caused the LLC not to pay real property taxes on the Property when due and not to make required mortgage payments, leading to, among other things, mortgage and tax foreclosure proceedings.

55. Defendant's self-dealing and improper conduct, as set forth above, has strained the Tri-Tech Companies financially and has needlessly exposed them to legal liability, including without limitation (*a*) the New York State Court action that JPMorgan Chase commenced in respect of the Corporation's alleged default under the Chase Loans, and (*b*) legal expense, including without limitation the legal expense being incurred in respect of this derivative action.

56. Upon information and belief, Defendant has undermined the financial integrity of the Tri-Tech Companies by wrongfully, improperly, falsely, and deceitfully transferring and diverting to himself hundreds of thousands of dollars that rightfully belonging to the Tri-Tech Companies.

57. Based upon the public filings of the Secretary of State of the State of New York, Defendant, unbeknownst to and without the permission of Plaintiff, established in or about November 2000, a limited liability company named, "Tri-Tech Realty II LLC," using the Armonk, New York address where Defendant, upon information and belief, then resided.

58.     Plaintiff never consented to Defendant trading on the name of the LLC or running such an operation out of any location other than the offices of the LLC, located at the Property.

59.     The LLC has valuable intellectual property rights in and to the name "Tri-Tech Realty," and, upon information and belief, Defendant is wrongfully benefiting from incorporating that name into the confusingly similar name "Tri-Tech Realty II LLC."

60.     Based upon the foregoing acts and omissions, Defendant has demonstrated that (*a*) he is unwilling to act in the best interests of the Tri-Tech Companies, to promote the purposes and interests of the of Tri-Tech Companies, and to act in conformance with the conditions identified above in Paragraph 40 and (*b*) he desires to abuse his position of responsibility to benefit himself personally.

61.     Defendant has compounded the impropriety of his acts and omissions by refusing to keep Plaintiff timely informed about the financial condition and business affairs of the Tri-Tech Companies, despite Defendants' obligation to do so under the Operating Agreement, the Shareholders' Agreement, and the law of the State of New York.

**E.     The Tri-Tech Companies can no longer function effectively**

62.     The relationship between Plaintiff and Defendant has disintegrated over the years, as Plaintiff began to learn of more and more acts of self-dealing by Defendant.

63.     Despite Plaintiff's repeated demands that Defendant adhere to his promises and assurances, as set forth above, and act properly and in the best interests of the Tri-Tech Companies, Defendant resolutely refused to do so.

64.     As a result, beginning in or about 2009, Plaintiff, who did not want to litigate or engage in a contentious relationship with Defendant, began negotiations for Defendant to buy out Plaintiff's ownership interests in the Tri-Tech Companies.

65.     The parties never reached an agreement on such a buy-out, and Plaintiff and Defendant thus remain 50% owners in the Tri-Tech Companies.

66.     Despite due demand by Plaintiff, Defendant has refused and continues to refuse to relinquish his role as managing the day-to-day business operations of the Tri-Tech Companies.

67.     In light of the wrongful, improper, false, and deceitful acts of misconduct by Defendant, there is dissension and deadlock between Plaintiff and Defendant regarding the management of the Tri-Tech Companies.

68.     As a result of the dissension and deadlock between Plaintiff and Defendant, the Board of Directors of the Corporation, consisting of Plaintiff and Defendant, has ceased to function.

69.     There is conflict and disagreement among the Members of the LLC as to the management of the Property.

70.     The differences between Plaintiff and Defendant are irreconcilable and have prevented furthering the purposes of the Tri-Tech Companies.

71.     Continued operation of the Tri-Tech Companies under the present circumstances will surely mean only further waste of assets.

72.     Based upon Defendant's repeated refusal to negotiate in good faith with Plaintiff, his refusal to step down from his position of managerial responsibility, and his refusal to refrain from the self-dealing actions he has taken, any attempt to obtain the result sought by this action would be futile and a waste of time and resources.

## AS AND FOR A FIRST CLAIM FOR RELIEF
### (Breach of fiduciary duty on behalf of the Corporation against Defendant)

73.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-72 above as if fully set forth herein.

74.     As a shareholder, director, and officer of the Corporation, and as a signatory to the Shareholders' Agreement, Defendant at all relevant times has owed a fiduciary duty to the Corporation and has been obligated to perform his duty in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances.

75.     As more fully set forth above, Defendant has engaged in repeated acts of self-dealing and misconduct that have directly and proximately damaged the Corporation by depriving it of substantial corporate assets, subjecting it to repeated acts of looting, subjecting it to legal and financial risk and legal expense, and depriving it of loan proceeds that should have gone to fund corporate obligations.

76.     Defendant 's misconduct, as more fully set forth above, demonstrates that he has not acted in good faith with respect to the Corporation and has not exercised the degree of care which an ordinarily prudent person in a like position would use under similar circumstances.

77.     As set forth above, Defendant, by his misconduct, as set forth above, has directly and proximately harmed the Corporation.

78.     Defendants' misconduct constitutes a breach of his fiduciary duty to the Corporation.

79.     As a direct and proximate result of Defendant 's breach of his fiduciary duty to the Corporation, Plaintiff has been damaged in an amount to be proven at the time of trial, but believed to be in excess of $3,000,000, plus pre-judgment interest and attorneys' fees.

80.     As a shareholder, director and officer of the Corporation, and as a signatory to the Shareholders' Agreement, Plaintiff has an interest in and has been harmed by Defendant's misconduct, as set forth above.

81.     As a shareholder, Director, and Officer of the Corporation, and as a signatory to the Shareholders' Agreement, Plaintiff is authorized to assert this claim derivatively on behalf of the Corporation.

82.     Inasmuch as Defendant took actions in the name of the Corporation, including without limitation borrowing money from JPMorgan Chase that Defendant diverted to his own personal benefit, that damaged Plaintiff, there is an antagonism for jurisdictional purposes between Plaintiff and the Corporation.

### AS AND FOR A SECOND CLAIM FOR RELIEF
### (Breach of fiduciary duty on behalf of the LLC against Defendant)

83.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-82 above as if fully set forth herein.

84.     As a Member and Manager of the LLC, and as a signatory to the Operating Agreement, Defendant at all relevant times has owed a fiduciary duty to the LLC and has been obligated to perform his duty in good faith and with that degree of care which an ordinarily prudent person in a like position would use under similar circumstances.

85.     As more fully set forth above, Defendant has engaged in repeated acts of self-dealing and misconduct that have directly and proximately damaged the LLC by depriving it of substantial corporate assets, depriving it of the fair market value rent to which it was entitled, subjecting it to repeated acts of looting, and subjecting it to legal and financial risk and legal expense.

86.     Defendant 's misconduct, as more fully set forth above, demonstrates that he has not acted in good faith with respect to the LLC and has not exercised the degree of care which an ordinarily prudent person in a like position would use under similar circumstances.

87.     As set forth above, Defendant has directly and proximately harmed the LLC.

88.     Defendants' misconduct constitutes a breach of his fiduciary duty to the LLC.

89.     As a direct and proximate result of Defendant 's breach of his fiduciary duty to the LLC, the LLC has been damaged in an amount to be proven at the time of trial, but believed to be in excess of $5,000,000, plus pre-judgment interest and attorneys' fees.

90.     As a shareholder, director and officer of the LLC, and as a signatory to the Operating Agreement, Plaintiff has a direct interest in and has been harmed by Defendant's misconduct, as set forth above.

91.     As a Member and Manager of the LLC, and as a signatory to the Operating Agreement, Plaintiff is authorized to assert this claim derivatively on behalf of the LLC.

92.     Inasmuch as Defendant took actions in the name of the LLC that have damaged Plaintiff, there is an antagonism for jurisdictional purposes between Plaintiff and the LLC.

## AS AND FOR A THIRD CLAIM FOR RELIEF
### (For an accounting)

93.     Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-92 above as if fully set forth herein.

94.     As stated above, Defendant owes and has owed since the inception of the Tri-Tech Companies a fiduciary duty to the Tri-Tech Companies and to Plaintiff.

95.     Upon information and belief, over the years of operating the Tri-Tech Companies, Defendant has acted wrongfully, improperly, and deceitfully, as set forth above, violating his fiduciary obligations to the Tri-Tech Companies.

96.     Despite repeated demands by Plaintiff to do so, Defendant has refused to relinquish his role as managing the day-to-day business operations of the Tri-Tech Companies, even though Defendant repeatedly has been violating the conditions under which Plaintiff consented to Defendant serving in that capacity and has been damaging the Tri-Tech

Companies repeatedly, as set forth above.  More specifically, and by way of example, on many occasions, Plaintiff requested that Defendant allow a professional bookkeeper to manage the day-to-day financial operations of the Tri-Tech Companies.  Defendant repeatedly refused to do so.

97.  Defendant's misconduct has damaged the Tri-Tech Companies, and Defendant's refusal to abide by his obligation to allow Plaintiff access to the books and records of the Tri-Tech Companies has made it impossible for Plaintiff to know fully the extent of Defendant's defalcations.

98.  Given Defendant's misconduct as a fiduciary, as set forth above, it is imperative that a full accounting be done to determine the true financial state of the Tri-Tech Companies.

99.  Despite due demand by Plaintiff, Defendant, who at all relevant times has had a fiduciary relationship with the Tri-Tech Companies and Plaintiff, has failed to account for the collection, use, waste and dissipation of the funds and assets of the Tri-Tech Companies and has refused to allow Plaintiff to conduct an accounting of the books and records of the Tri-Tech Companies.

100.  As a matter of law, and pursuant to the Shareholders' Agreement and the Operating Agreement, Plaintiff is entitled to an accounting of the Tri-Tech Companies.

101.  For the foregoing reasons, the Court should direct that (*a*) an accounting of the Tri-Tech Companies take place forthwith, and (*b*) Defendant bear the cost of such accounting.

102.  Plaintiff has no adequate remedy at law with respect to the relief requested in this Third Claim for Relief and thus is compelled to seek such relief.

**AS AND FOR A FOURTH CLAIM FOR RELIEF**
**(For the judicial dissolution and wind-up of the Corporation pursuant to NYBCL §1104(a)**

103.    Plaintiff repeats and realleges the allegations set forth above in Paragraphs 1-102 as if fully set forth herein.

104.    There is internal dissension between Plaintiff and Defendant, each owning 50% of the shares of the Corporation.

105.    Plaintiff and Defendant are so divided respecting the management of the Corporation's affairs that the votes required for action by the board cannot be obtained.

106.    Plaintiff and Defendant are so divided that dissolution of the Corporation would be beneficial to them as the shareholders of the Corporation and will in no way be injurious to the public.

107.    As a result of the foregoing, Plaintiff is entitled to the dissolution of the Corporation pursuant to §1104(a) of the New York Business Corporation Law and hereby requests that the Court enter judgment pursuant to that statute, dissolving the Corporation.

108.    Plaintiff has no adequate remedy at law with respect to the relief requested in this Fourth Claim for Relief and thus is compelled to seek such relief.

109.    Nothing in the Shareholders' Agreement or Certificate of Incorporation of the Corporation precludes the relief sought in this Fourth Claim for Relief, and the public will not be harmed by such relief.

110.    Given the circumstances set forth herein, the Court should appoint a neutral Receiver or liquidating agent to wind up the affairs of the Corporation.

## AS AND FOR A FIFTH CLAIM FOR RELIEF
**(For the judicial dissolution and wind-up of the Corporation pursuant to NYBCL §1104-a)**

111.    Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-110 as if fully set  forth herein.

112.   As set forth above, Defendant owes and since the inception of the Tri-Tech Companies has owed fiduciary duties to the Corporation and to Plaintiff.

113.   As set forth above, in violation of his fiduciary duties to the Corporation, Defendant has engaged in fraudulent and oppressive behavior toward Plaintiff.

114.   As a result of the foregoing, Plaintiff, a 50% shareholder of the Corporation, is entitled to dissolution of the Corporation pursuant to §§1104-a(a)(1) and 1104-a(a)(2) of the New York Business Corporation Law and hereby requests that the Court enter judgment pursuant to that statute, dissolving the Corporation.

115.   Pursuant to New York Business Corporation Law §1104-a(d), Plaintiff also requests that the Court enter judgment that Plaintiff's and Defendant 's stock valuations be adjusted and further requests that the Court assess a surcharge upon Defendant  for his willful and wrongful dissipation or transfer of the Corporation's assets or property without providing just compensation to Plaintiff.

116.   Nothing in the Shareholders' Agreement or Certificate of Incorporation of the Corporation precludes the relief sought in this Fourth Claim for Relief, and the public will not be harmed by such relief.

117.   Given the circumstances set forth herein, the Court should appoint a neutral Receiver or liquidating agent to wind up the affairs of the Corporation.

## AS AND FOR A SIXTH CLAIM FOR RELIEF
### (For the judicial dissolution of the LLC pursuant to NYLLCL §702)

118.   Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-117 as if fully set forth herein.

119.   As set forth in the Operating Agreement, the LLC was created for the purpose of managing and developing the Property.

120.   Fundamental to managing real property is collecting rent and paying real property taxes on the real property.

121.    The LLC has done neither:  it has not collected any rent and has not paid real property taxes that are due and owing on the Property.

122.   As a result, the LLC has no operating income with which to pay its debts on the Property as they become due, and the continued existence of the LLC is not financially feasible on an ongoing basis.

123.   Because Plaintiff and Defendant each hold a 50% interest in the LLC, there is no mechanism by which the LLC can lease the Property by unanimous vote of its Members, as required pursuant to Section 4.4 of the Operating Agreement, and the LLC is effectively paralyzed, unable to collect rent and unable to pay its debts when they become due.

124.   As a result of the foregoing, it is no longer possible to carry on the business of the LLC in conformance with the Operating Agreement.

125.   Given Defendant 's personal exploitation and encumbrance of the LLC's primary asset (the Property), it is apparent that Defendant is unable or unwilling to reasonably permit or promote the purpose of the LLC to be achieved.

126.   Section 4.8 of the Operating Agreement provides that Managers can only be removed by unanimous vote of the Members of the LLC, of which there are only two, Plaintiff and Defendant.

127.   Section 8.1 of the Operating Agreement provides that Members of the LLC can only withdraw their interests upon such terms and conditions as mutually agreed upon among all Members.

128. Defendant refuses to remove himself as a Manager or to reach agreement with Plaintiff on Plaintiff's withdrawal from the LLC, leaving the LLC paralyzed.

129. Upon information and belief, Defendant will not agree to a sale or other disposition of substantially all of the assets of the LLC pursuant to § 8.2.3 of the Operating Agreement and will not approve dissolution of the LLC, as required for dissolution pursuant to § 8.2.4 of the Operating Agreement.

130. Plaintiff has no adequate remedy at law and is compelled to seek the equitable remedy of the judicial dissolution of the LLC.

131. There are no provisions in the LLC's Articles of Incorporation or its Operating Agreement that might otherwise preclude the relief requested herein, and the dissolution of the LLC will in no way be injurious to the public.

132. With no other reasonable alternatives, dissolution and liquidation of the LLC's assets would be in the best legitimate financial and personal interests of the LLC's members.

133. Without a judicial dissolution of the LLC, Plaintiff's rights will continue to be compromised and valuable assets and income of the LLC will continue to be diverted by Defendant.

134. As a result, Plaintiff respectfully requests that the LLC be dissolved pursuant to New York Limited Liability Company Law § 702 and that a Receiver be appointed to dispose of the Property, known as and located at 40 Hartford Avenue, Mount Vernon, New York 10553.

### AS AND FOR A SEVENTH CLAIM FOR RELIEF
**(For the wind-up of the LLC pursuant to Section 8.3 of the Operating Agreement)**

135. Plaintiff repeats and realleges the allegations set forth in Paragraphs 1-134 as if fully set forth herein.

136.    A wind up of the LLC is authorized under Article 8.3 of the Operating Agreement under the circumstances set forth above.

137.    Due to the breakdown of trust between Plaintiff and Defendant, it is critical that a neutral third-party serve as Receiver or liquidating agent and be responsible for winding up the LLC's affairs, taking into account Defendant 's waste and dissipation of the LLC's assets.

138.    Given the circumstances outlined above, Plaintiff is entitled to the appointment of a Receiver to wind up the assets and liabilities of LLC in accordance with § 8.3 of the Operating Agreement.

139.    Without such relief all parties to this action could sufferable irreparable economic consequences.

140.    Thus, the Court should enter judgment winding up the affairs of the LLC.

### AS AND FOR AN EIGHTH CLAIM FOR RELIEF
#### (For a constructive trust)

141.    Plaintiff repeats and realleges the allegations set forth above in Paragraphs 1-136 as if fully set forth herein.

142.    Without justification, Defendant has undermined the financial integrity of both the Tri-Tech Companies by withdrawing hundreds of thousands of dollars from the Corporation's accounts while refusing to agree to pay payroll taxes owed by the Corporation and real property taxes owed by the LLC, as more fully outlined above.

143.    As a direct and proximate result of Defendant 's misconduct, Plaintiff has been damaged in an amount to be proven at the time of trial, but believed to be in excess of $8 million, plus pre-judgment interest and attorneys' fees.

144.    Plaintiff is entitled to the imposition of a constructive trust on all proceeds obtained by Defendant  from his self-dealings with the Tri-Tech Companies.

22

**WHEREFORE**, Plaintiff respectfully requests the following relief:

A.      On the First Claim for Relief, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $3,000,000.00, plus pre-judgment interest;

B.      On the Second Claim for Relief, judgment for damages in an amount to be proven at the time of trial, but believed to be in excess of $5,000,000.00, plus pre-judgment interest;

C.      On the Third Claim for Relief, directing that an accounting of the Tri-Tech Companies take place and that Defendant bear the cost of that accounting.

D.      On the Fourth and Fifth Claims for Relief, dissolving the Corporation and directing that all of the Corporation's property be sold in an expeditious but commercially reasonable manner and appointing a Receiver or liquidating agent to wind-up the affairs of the Corporation.

E.      On the Sixth and Seventh Claims for Relief, dissolving the LLC and directing that all property of the LLC be sold in an expeditious but commercially reasonable manner and appointing a Receiver or liquidating agent to wind-up the affairs of the LLC;

F.      On the Fourth, Fifth, Sixth, and Seventh Claims for Relief, directing that Defendant bear the entire cost of the dissolution, liquidation, and wind-up process and bear the entire cost of the appointment of a Receiver or liquidating agent.

G.      On the Eighth Claim for Relief, implementing a constructive trust on all proceeds obtained by Defendant from his self-dealings with the Companies; and

H.      For such other and further relief as is just and proper, including without limitation awarding Plaintiff his reasonable attorneys' fees and court costs.

Dated: Katonah, New York
        August 1, 2017

Michael R. Gordon (MG-7838)
GordonLaw LLP

*Attorneys for Plaintiff Dennis DiDonato*

51 Bedford Road, Suite 10
Katonah, New York  10536
914.232.9500
mgordon@gordonlawllp.com

## VERIFICATION

STATE OF CONNECTICUT          )
                              ) SS.:
COUNTY OF FAIRFIELD           )

Dennis DiDonato, being duly sworn, deposes and says:

I am the Plaintiff in this action. I have read the Verified Complaint and know its

contents. The Verified Complaint is true to my knowledge, except as to those matters therein

stated to be alleged on information and belief and, as to those matters, I believe them to be true.

DENNIS DiDONATO

Sworn to before me this
/ s$^t$ day of August, 2017

NOTARY PUBLIC

ELLEN L. JONES
NOTARY PUBLIC
STATE OF CT
My Commission Expires January 31, 2019

24